# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| KASIB SEVEN BIZZARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-004 |
| | ) | |
| AUSTIN FORAKER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court previously entered an Order screening *pro se* plaintiff Kasib Seven Bizzard's 42 U.S.C. § 1983 Complaint. *See* doc. 15. The Order entered includes a clerical error inconsistent with the Court's substantive analysis. *See id.* at 1. To correct that error, the Court's prior Order, doc. 15, is **VACATED** and replaced with the Order below. To accommodate any confusion created by the error, the Court extends the deadline for Bizzard to submit his Amended Complaint, as discussed below.

*Pro se* plaintiff Kasib Seven Bizzard has filed this 42 U.S.C. § 1983 case asserting claims arising from his 2018 arrest in Savannah, Georgia and subsequent proceedings. *See* doc. 1 at 8-11. The Court granted

Bizzard leave to proceed *in forma pauperis*, doc. 12, and he returned the required forms, docs. 13 & 14. The Court must, therefore, screen his Complaint pursuant to 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Bizzard is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Bizzard alleges that he was stopped by police in Savannah, Georgia on December 29, 2018. *See* doc. 1 at 8. He alleges that, "[a]s [he] attempted to walk away," officers forcibly restrained him. *Id.* at 9. While he was restrained, he alleges that he was kicked and "handle[d] very roughly." *Id.* He was arrested on several charges. *Id.* He alleges that officers lacked the requisite suspicion to conduct the original stop. *Id.* at

10. Because of his arrest, his probation was revoked in 2019. *Id.* He later succeeded in suppressing the evidence collected during the stop and the charges arising from it were dropped on January 6, 2021. *Id.* at 10-11. He was, however, unsuccessful in securing relief from his probation revocation. *Id.* at 11. He seeks "damages for false arrest, false imprisonment, malicious prosecution[,] and unpoke [sic] use of force . . . ." *Id.* at 11. He also seeks other equitable relief. *Id.* at 12-13.

Section 1983 claims are subject to the statute of limitations applicable to personal-injury torts under state law. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (internal citation omitted). Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *see also Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff. *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*). Although the statute of limitations is often an affirmative defense, it is applicable at screening where it is apparent on the face of a complaint. *See, e.g., Jones v. Bock*, 549 U.S.

199, 215 (2007). For purposes of this screening analysis, Bizzard's Complaint is deemed filed September 29, 2022.[1] *See* doc. 1 at 6.

The Fourth Amendment "encompasses the right to be free from excessive force during the course of a criminal apprehension." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (internal quotation marks and citation omitted). "To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Id.* (internal quotation marks and citation omitted). Although Bizzard alleges the essential elements of a Fourth Amendment excessive-force claim, those allegations make clear that the events occurred at the time of his arrest. *See* doc. 1 at 8-9. The excessive force claim, therefore, accrued, and the two-year period began to run, on December 29, 2018. It, therefore, ran

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009). "Absent evidence to the contrary in the form of prison logs or other records, [courts] will assume that [a prisoner's filing] was delivered to prison authorities on the day he signed it . . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Bizzard's Complaint bears a signature date of September 29, 2022. *See* doc. 1 at 6. However, it was not postmarked until December 30, 2022. *See id.* at 21. The Clerk did not receive it until January 4, 2023. *See id.* at 1. Because Bizzard's purported signature date is the earliest date upon which the Complaint could be deemed filed, the Court has assumed it for screening purposes only.

4

out years before he filed his Complaint.[2] His excessive-force claim arising from his December 29, 2018 arrest is, therefore, **DISMISSED** as time-barred.

Bizzard's false arrest and false imprisonment claims are also time barred. False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388. "[A] federal . . . claim for false arrest requires the plaintiff to show the absence of probable cause at the time of the arrest." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020). A § 1983 claim for false imprisonment is "based on a detention pursuant to that arrest [that lacked probable cause]." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *see also Wallace*, 549 U.S. at 389 ("[F]alse imprisonment consists of detention without legal process."). As the Eleventh Circuit has explained:

> A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment. *See Cannon v. Macon*

---

[2] The statute of limitations was tolled by the Georgia Supreme Court's emergency order, for 120 days between March 14, 2020 and July 14, 2020. *See, e.g., Kennedy v. South Univ.*, 2022 WL 628541, at *4-*5 (S.D. Ga. Mar. 3, 2022). As this Court has explained, for statutes of limitations that began running prior to March 14, 2020, the Emergency Order grants plaintiffs an additional 122 days (the time between March 14 and July 14, 2020) to file claims. *Id.* at *5. Since Bizzard's excessive force claim accrued on December 29, 2018, 441 days ran before the Emergency Order tolled it. It began to run again on July 14, 2020. More than two additional years passed between July 14, 2020 and September 29, 2022, when the Complaint was filed.

> *County*, 1 F.3d 1558, 1562–63 (11th Cir. 1993), modified on other grounds, 15 F.3d 1022 (1994). The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement. *See id.* at 1562 n. 3. The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* at 1563; *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (per curiam).

*Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). "[F]alse imprisonment[, or false arrest,] ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389; *see also White v. Hiers*, 652 F. App'x 784, 786 (11th Cir. 2016).

Bizzard alleges that his initial stop and arrest lacked a sufficient basis. *See* doc. 1 at 10.³ The Court—stretching the limits of charitable construction—infers an allegation that his subsequent formal arrest lacked probable cause. *See id.* at 9. *Cf. State v. Bizzard*, 850 S.E.2d 775,

---

³ Bizzard alleges that "prior to the stop and frisk, Ofc. Baldwin did not have probable cause to stop [him]." Doc. 1 at 10, ¶ 12. The allegation that the stop "lacked *probable cause*," *id.* (emphasis added), is not facially sufficient to allege that the stop and frisk violated his Fourth Amendment rights. A "brief, warrantless, investigatory stop," does not require probable cause, but only reasonable suspicion. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 30 (1968). At some point, any initial temporary stop ripened into formal arrest, which would require probable case. Given the charitable construction applicable to *pro se* pleadings, the Court will overlook the technical distinction, if only for purposes of this screening.

6

779 (Ga. Ct. App. 2020) ("Given the record before us, we must conclude that the State failed to demonstrate probable cause for Bizzard's arrest."). Whether the initial stop, search, and subsequent arrest lacked sufficient factual bases, however, Bizzard's false arrest or false imprisonment claims arising from those events could not have lasted beyond the point that he was subjected to formal criminal process. *See Wallace*, 549 U.S. at 389. Despite that ambiguity, however, Bizzard does allege that "[o]n March 20, 2019, [his] probation was revoked." Doc. 1 at 10, ¶ 14. The filing of a probation-revocation petition, and obviously a court's granting of such a petition, are "legal process" which terminate any claim Bizzard might assert for false arrest or false imprisonment. *See, e.g., Turner v. Floyd Med. Ctr.*, 2022 WL 1443390, at *3 (N.D. Ga. May 6, 2022). *Cf. Sanders v. Sanders*, 2021 WL 1277964, at *3 (S.D. Ga. Feb. 22, 2021) (recognizing that "a probation warrant" precluded a claim for false arrest). It, therefore, appears that Bizzard's false arrest or false imprisonment claim ended, and the statute of limitations began to run, no later than March 20, 2019.[4] The two-year period ran out, therefore,

---

[4] Bizzard alleges that a probation revocation petition was filed on January 2, 2019. *See* doc. 1 at 10. That filing might have triggered the statute of limitations on his false arrest and false imprisonment claims. Even giving Bizzard the benefit of the later

7

well before the Complaint was filed.[5]  Bizzard's false arrest or false imprisonment claim, arising from the detention that followed his 2018 arrest, are, therefore, **DISMISSED** as time barred.

"[T]he tort of malicious prosecution requires a seizure 'pursuant to legal process.'" *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (citation omitted).  "[S]eizures following an arraignment, indictment, or probable-cause hearing," give rise to malicious prosecution claims. *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citation omitted).  In order to establish a § 1983 malicious prosecution claim, "a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free of unreasonable seizures." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (citation and quotation marks omitted); *see also Williams*, 965 F.3d at 1157 ("[T]his Court uses 'malicious prosecution' as only 'a

---

revocation date, his claims are time barred.

[5] As discussed above, the Georgia Supreme Court's Emergency Order tolling statutes of limitations effected this claim.  The limitations period ran for approximately 360 days, from March 20, 2019 until March 14, 2020, when it was tolled by the Emergency Order.  It then began to run again on July 14, 2020.  *See Kennedy*, 2022 WL 628541, at *5.  As discussed above, more than two additional years passed between the expiration of the tolling period and September 29, 2022, when Bizzard filed his Complaint.

shorthand way of describing' certain claims of unlawful seizure under the Fourth Amendment."). The elements of the common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez*, 915 F.3d at 1285 (citation omitted).

> [T]he favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement. A formal end to criminal proceedings will satisfy this standard unless it precludes any finding that the plaintiff was innocent of the charges that justified his seizure, which occurs only when the prosecution ends in the plaintiff's conviction on or admission of guilt to each charge that justified his seizure.

*Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020). A malicious prosecution claim does not accrue until the favorable termination occurs. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994).

Bizzard alleges that the charges arising from his 2018 arrest and search were "dismissed" on January 6, 2021. *See* doc. 1 at 11, ¶ 18. That is sufficient to allege a favorable termination. He has also alleged that the original arrest lacked probable cause. At the screening stage, the Court infers malice from the allegation that probable cause was lacking.

9

*Cf. Luke v. Gulley*, 50 F.4th 90, 97 (11th Cir. 2022) (recognizing that malice may be inferred from absence of probable cause, for purposes of common law element of malicious prosecution claim). The Court is somewhat skeptical that Bizzard has sufficiently alleged the remaining elements to survive a fully briefed Motion to Dismiss. In particular, the Court notes that, in this Circuit, "defendant police officers were not the legal cause of [an] original [criminal] proceeding [arising out of a false arrest] where there was no evidence that they had anything to do with the decision to prosecute or that they had improperly influenced that decision . . . ." *Williams v. Miami-Dade Police Dept.*, 297 F. App'x 941, 947 (11th Cir. 2008) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994)). The Court will, however, afford Bizzard an opportunity to clarify whether the named defendants had any role in his subsequent prosecution.

In summary, Bizzard's excessive force, false arrest, and false imprisonment claims are **DISMISSED** as they fail to state a claim upon which relief can be granted and do not appear amendable. *See* 28 U.S.C. § 1915A(b)(1); *see, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("[A] district court need not allow amendment if the amended

complaint would still be subject to dismissal."). However, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins*, 620 F. App'x at 711. Since the Court cannot definitively conclude that Bizzard's malicious prosecution claim fails, it will afford him such an opportunity. Bizzard is **DIRECTED** to submit an Amended Complaint no later than April 17, 2023.[6] To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Bizzard is advised that his amended complaint will supersede his original complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Bizzard is further advised that failure to timely submit his amended complaint may

---

[6] To the extent that Bizzard contends that he can supplement his allegations concerning the dismissed claims to show that they are not time barred, the opportunity to submit an Amended Complaint, discussed below, affords him an opportunity to do so.

11

result in dismissal for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

Finally, the Court must assess Bizzard's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects an average monthly balance of $316.89. Doc. 13 at 1. Based upon his furnished information, he owes an initial partial filing fee of $63.78. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the

custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED,** this 13th day of March, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA